## In re ROGER'S ESTATE.

(*Surrogate's Court, Orange County.* February 28, 1890.)

**DESCENT AND DISTRIBUTION—LEGACY TAX—LEGACY TO PAY DEBT.**

Testator's will gave to H. "any and all benefit, so far as his interest may appear and be proved," in the moneys payable at testator's death under his membership in an insurance association; the balance to testator's wife. The insurance was effected to secure testator's debt to H. *Held* that, as H. took nothing unless he proved a debt against the estate, the money he would receive was not, within Laws N. Y. 1887, c. 713, § 1, taxing legacies.

Proceedings to collect the collateral inheritance and legacy tax on the estate of John L. Rogers, deceased.

*D. A. Scott*, for Mary E. Rogers, widow.  *Theodore Miller*, for John B. Hillyer.

COLEMAN, S.   By an instrument which has been admitted to probate as the will of John L. Rogers, who died a resident of this county, October 12, 1889, it is provided as follows: "I hereby give and bequeath to J. B. Hillyer, of 74 Broadway, New York city, any and all benefit, so far as his interest may appear and be proved. The balance and remainder to my wife, * * * any and all benefit and moneys which may accrue or become due and payable at my decease under and by virtue of my membership in the Northwestern Masonic Aid Association of Chicago." It appears that the testator, in order to secure an indebtedness to J. B. Hillyer, effected an insurance upon his life with the Masonic Aid Association, and there is now due Hillyer upon this indebtedness $5,163.39, as ascertained and reported by the appraiser appointed under chapter 713, Laws 1887. It is claimed that this sum is not liable to the tax imposed by the act mentioned; that is not a gift, legacy, or inheritance within the meaning of that act. The act is entitled "An act to tax gifts, legacies, and collateral inheritances," and the property made subject to tax by section 1 is all property which shall pass by will, or by the intestate laws of this state, from any person who may die seised or possessed of the same. It does not appear to whom the insurance would have been payable if there had been no will, and I do not suppose that is material in this proceeding; for, if the will had not contained the provision in favor of Hillyer, the wife would have taken it all under the will, and the fund, therefore, would not be taxable. Whether Hillyer takes anything under the will depends upon his being able to prove a debt. He takes nothing if there was no debt. So that, while he may be entitled to receive something by virtue of the will, he does not get it as a gift, but as payment of a debt. It may be that, unless he had been provided for in this way by the will, Hillyer would not have been able to collect his debt, by reason of the terms of the contract of insurance; still, as I have said, whatever he may get, even by virtue of the will, is simply the payment of his debt. The words "give and bequeath" are employed by the testator, but I do not think that thereby any added force or character was given Hillyer's claim, and the use of them accomplished nothing more than the usual general direction in wills to pay debts and funeral expenses. I am therefore of opinion that the money received by Hillyer is not a gift, legacy, or inheritance, or property which has passed by will from a person who has died seised or possessed of the same. A bequest in satisfaction of a debt has been held to be within the definition of a legacy, (*Orton* v. *Orton*, 3 Abb. Dec. 411, 414,) but I doubt if the word "legacy" is used in so broad a sense in this act. A legacy naturally implies bounty or benevolence, (*Lockyer* v. *Simpson*, Mos. 300; *Clark* v. *Sewell*, 3 Atk. 98;) and it has been held that so far as a legacy is applied to pay a debt it is no legacy, and to be a payment and not a gift, (*Rawlins* v. *Powel*, 1 P. Wms. 299; *Cuthbert* v. *Peacock*, 1 Salk. 155.) Having reached this conclusion, it is not necessary to consider whether,

under the circumstances, the money being received as a benefit from an aid association after death of a member, it can properly be considered property that has passed "from a person who may died seised or possessed of the same," which I am inclined very much to doubt.

---

## In re CAPRON'S ESTATE.

*(Surrogate's Court, Orange County.    March 11, 1890.)*

DESCENT AND DISTRIBUTION—LEGACY TAX—STEP-CHILDREN.

At the time of testatrix's marriage, about 30 years before her death, her husband had four daughters by a former wife. One was married, and the other three lived with their father and testatrix until they married. They called testatrix "mother," and received a mother's care from her. The same friendly relations continued after the marriage of the daughters. *Held* that, as to the three daughters who were unmarried at the time of testatrix's marriage, testatrix had, "for not less than 10 years prior to her death, stood in the mutually recognized relation of parent," within the legacy tax law, so as to exempt legacies to them, but that this relation did not exist as to the other daughter.

Proceedings for the collection of the collateral inheritance and legacy tax on the estate of Helen Capron, deceased.

*J. G. Graham,* for the executrix.

COLEMAN, S.    The testatrix died September 17, 1888, and by her will, after giving a number of specific legacies of small value, gave all the residue of her property to four daughters of her deceased husband by a former wife. At the time of her marriage to the father of these legatees, some 35 years ago, the youngest of them was 9, the next older 16, and a third 22, years of age. These three remained at home with their father and step-mother until their respective marriages. The fourth daughter had married and left home before the marriage of testatrix. While the three younger daughters remained at home the testatrix looked after their education, training, deportment, and clothing. She gave them the care and protection of a mother; and they recognized her right to do so, and always addressed her as mother, and she spoke of them as her children    After their marriage the same friendly relations and manner of address continued so far as they could, under their changed circumstances. She did not, however, contribute to their support except in the matter of care of themselves and their clothing. The question now arises whether the testatrix, "for not less than ten years prior to her death, stood in the mutually recognized relation of a parent" to these legatees, so as to bring them within the class excepted from taxation. A step-parent does not necessarily stand in the relation of a parent, within the meaning of this act, to step-children. Whether they do or not depends on the circumstances of each case. I think, in order to constitute this relation, some time during the continuance of the intercourse between the persons there should be a period of dependence on the part of the younger, a time when the younger required and received parental care, though not necessarily a dependence for support and maintenance; for this the natural mother does not generally provide. This relation must therefore begin in youth, though not of necessity during legal minority; and it should not be confounded with relations which, growing out of mutual needs or wishes, have resulted in warmest friendships, and some times in forming a household, but one in which the parental element is lacking. I find parties, in seeking exemption from this tax, frequently mistake this latter relation for the parental one. It often happens, indeed it is usually the case, that in after years, as the children grow to womanhood and manhood, they separate from their parents, and establish homes of their own; but they are no less parents and children. So, too, this relation may continue between persons who have come by force of circumstances to occupy that relation, even after they have discontinued liv-